United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| SCOTT CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 14-13714-NMG |
| BRIAN CASEY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

**I.  Background**

Plaintiff Scott Campbell ("plaintiff") brought this case against Officer Brian Casey ("defendant") with respect to a traffic stop, arrest and subsequent prosecution for operating under the influence.  Plaintiff claims that defendant conducted an unreasonable search and seizure in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.  Plaintiff also alleges several state law tort claims.

According to Campbell, on October 11, 2012 he consumed one 12-ounce beer in the parking lot of the New England Sports Center in Marlborough, Massachusetts after participating in a hockey game.  He subsequently began to drive home and was later stopped and arrested by Officer Casey.  Plaintiff contends that

-1-

during the drive he operated his vehicle entirely in accordance with all applicable traffic laws.

While travelling northbound on Route I-495 and exiting that highway, plaintiff noticed a police cruiser traveling behind him.  The cruiser stopped in a grassy area near the exit ramp but later caught up to plaintiff's vehicle and followed him as he exited Route 2 at Newtown Road in Littleton, Massachusetts. At that point, the police cruiser's flashing blue lights were engaged and plaintiff was pulled over.  Officer Casey ordered plaintiff out of his vehicle, administered several field sobriety tests and then arrested plaintiff for operating under the influence.

At the Littleton Police station, plaintiff refused a chemical Breathalyzer test and was released after several hours. He was arraigned in Ayer (Massachusetts) District Court in October, 2012 on a criminal charge of operating under the influence of intoxicating liquor, third offense and a civil motor vehicle "marked lanes" violation, to which he pled not guilty.  Pursuant to Massachusetts law, plaintiff's license was suspended for five years as a result of his refusal to undergo the Breathalyzer test.  In April, 2014 plaintiff was acquitted by a jury in Ayer District Court.  He was also found not responsible on the civil marked lanes violation charge.  Three

days later, the district court ordered that plaintiff's driver's license be reinstated.

Campbell avers, and Officer Casey concedes, that before the stop Officer Casey had "run" Campbell's license plate number and obtained information regarding Campbell's four past offenses for operating under the influence.  Officer Casey claims that prior to the stop he had also observed Campbell's pick-up truck cross the white fog line and had noticed that the rear window of the vehicle appeared to be inordinately tinted.

Plaintiff asserts that defendant had seen no evidence of an offense and had no reasonable suspicion for stopping his vehicle.  Plaintiff contends that defendant conducted the stop based solely on plaintiff's past criminal record.

In September, 2014 Campbell filed the complaint in this case against Officer Casey in his personal capacity.  Pending before the Court is defendant's motion for summary judgment on all counts of the complaint.  For the reasons explained below, defendant's motion will be denied.

## II. **Motion for Summary Judgment**

Defendant Officer Casey moves for summary judgment on the merits of each of plaintiff's five claims.  The complaint alleges (1) unlawful search and seizure in violation of the Fourth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983, (2) false arrest, (3) false imprisonment, (4)

intentional infliction of emotional distress and (5) malicious prosecution. Defendant also asserts qualified immunity with respect to plaintiff's constitutional claim.

### A. Legal Standard for Summary Judgment

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B. Analysis**

   **1. Count I: Unlawful Seizure and Arrest Under 42 U.S.C. § 1983**

Plaintiff first claims that defendant subjected him to an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments by stopping him without reasonable suspicion and arresting him without probable cause.  Defendant seeks summary judgment due to qualified immunity as well as on the merits.

     **a. Legal Standard**

Qualified immunity protects government officials performing discretionary functions from liability for conduct that is objectively reasonable. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It shields officials from suits brought against them in their individual capacities.

To assess qualified immunity claims in § 1983 actions, the Court applies a two-step inquiry.  The Court may exercise its discretion in determining which of the two prongs should be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In the first step, the Court must decide "whether the facts

alleged or shown by the plaintiff make out a violation of a constitutional right." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009). In the second step, the Court must determine whether the right was "clearly established at the time of the defendant's alleged violation." Id.

The second stage of the inquiry has two facets, one focusing on law and one focusing on fact. The first facet requires the Court to examine the level of clarity of the law at the time of the alleged civil rights deprivation. Id. For a right to be clearly established,

> the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Wilson v. Layne, 526 U.S. 603, 615 (1999) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987).

The second facet involves an analysis of whether, given the factual circumstances of the case, "a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." Maldonado, 568 F.3d at 269. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015).

-6-

An investigatory stop, otherwise known as a Terry stop, is considered reasonable "so long as the presence of reasonable suspicion is at least arguable." Eldredge v. Town of Falmouth, MA, 662 F.3d 100, 106 (1st Cir. 2011) (quoting McInnis v. Maine, 638 F.3d 18, 22 (1st Cir. 2011). Reasonable suspicion requires "articulable facts" that give rise to the belief that a suspect may be involved in a criminal activity. Id.  In the context of a warrantless arrest, conduct is reasonable "if the presence of probable cause is arguable or subject to legitimate question," even if the arrest later turns out to be unconstitutional. Cox v. Hainey, 391 F.3d 25, 31 (2004).  Probable cause requires a reasonable likelihood that the arrestee committed the alleged crime. Id.

### b. Application

#### i. Terry Stop

The first question of the qualified immunity analysis may be answered in the affirmative.  Plaintiff's allegation that he was subject to a Terry stop unsupported by reasonable suspicion states a claim for a violation of his Fourth Amendment right. Terry v. Ohio, 392 U.S. 1, 30 (1968).  Plaintiff has therefore alleged a violation of a constitutional right.

Viewing the record in the light most favorable to plaintiff, the right alleged to have been violated was also clearly established at the time that the Terry stop occurred.

In 2012 a reasonable officer should have been aware that a driver's criminal record, standing alone, was not a sufficient basis to find reasonable suspicion to stop him.  Judicial precedent in other circuits has established that principal.  E.g., United States v. Davis, 636 F.3d 1281 (10th Cir. 2011); United States v. Powell, 666 F.3d 180, 188 (4th Cir. 2011). Where, as here, no binding precedent directly on point exists within the First Circuit, the right is still clearly established because "the unlawfulness [is] apparent." Anderson, 483 U.S. at 640.  Thus our analysis turns on the factual aspect of the second question.

Defendant argues that he had reasonable suspicion to stop Campbell's truck because he had observed Campbell cross over the white fog line and noticed tinting on the truck's rear window. Those observations, defendant asserts, gave rise to a belief that defendant may have committed traffic violations including operating under the influence, impaired or exhausted operation, lane violations and illegal window tinting.  Plaintiff, in turn, contends that he did not cross the white fog lane and that his rear window was not tinted.  A genuine issue of material fact remains, therefore, as to whether "articulable facts" existed that would have made reasonable suspicion of criminal activity "at least arguable." Eldredge, 662 F.3d at 106.

Defendant argues that the factual disputes do not create genuine issues of material fact precluding summary judgment. In support, he cites Johnson v. Crooks, 326 F.3d 995, 998-99 (8th Cir. 2003). That case is, however, inapposite. In Johnson, the Eighth Circuit granted summary judgment to a defendant police officer in a § 1983 suit alleging that the officer had conducted a Terry stop without reasonable suspicion. The Court found that the plaintiff had created a genuine fact dispute by alleging that she did not commit the traffic violation that the defendant claimed had given rise to reasonable suspicion. The Court went on to hold, however, that because the plaintiff was only briefly questioned and was allowed to leave without even a citation, the officer had not "unreasonably intruded upon the privacy and liberty interests protected by the Fourth Amendment." Thus the dispute did not involve a fact material to the Fourth Amendment inquiry and the defendant was entitled to judgment as a matter of law. The stop, arrest and subsequent prosecution in this case constitute a much greater intrusion into plaintiff's Fourth Amendment rights than was present in Johnson, and therefore the facts in dispute are material to the Court's inquiry.

Plaintiff raises a credible factual dispute as to whether Officer Casey had an arguably sufficient factual basis to find probable cause to conduct the traffic stop, and therefore as to whether Officer Casey violated plaintiff's constitutional

-9-

rights.  That factual dispute precludes summary judgment both on defendant's qualified immunity claim and on the merits of plaintiff's claim.  Accordingly, Officer Casey's motion for summary judgment on Campbell's illegal Terry stop claim will be denied.

### ii. Arrest

Plaintiff advances two theories to support his claim that he was arrested without probable cause.  First, he claims that because Office Casey arrested him based on evidence discovered during an unconstitutional Terry stop, there was no probable cause for the arrest.  That argument appears to be based upon the "fruit of the poisonous tree" doctrine, an extension of the exclusionary rule which dictates that evidence obtained through an unlawful search and seizure must be suppressed at trial. See, e.g., Wong Sun v. United States, 371 U.S. 471, 484-88 (1963).

The exclusionary rule and its extension are, however, a judicial created remedy developed in the context of criminal proceedings.  The Supreme Court has repeatedly declined to expand the exclusionary rule to non-criminal contexts. See United States v. Janis, 428 U.S. 433, 454 & n.28 (1976) (civil tax proceedings); Stone v. Powell, 428 U.S. 465, 493 (1976) (habeas proceedings); United States v. Calandra, 414 U.S. 338, 347 (1974) (grand jury proceedings); INS v. Lopez-Mendoza, 468 U.S. 1032, 1050 (1984) (INS deportation proceedings); see also

Vigeant v. United States, 245 F.App'x 23, 24-25 (1st Cir. 2007) (state law tort claims).

Similarly, the "fruit of the poisonous tree" doctrine cannot appropriately be applied in the context of § 1983 claims. The doctrine is a remedial mechanism designed

> to deter future unlawful police conduct and [to] protect liberty by creating an incentive—avoidance of the suppression of illegally seized evidence—for state actors to respect the constitutional rights of suspects.

Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999) (quoting Calandra, 414 U.S. at 348). If imported into the context of § 1983 claims, the doctrine would "vastly overdeter state actors." Id. at 146.

While § 1983 suits serve the purpose of deterrence, their main function is compensatory. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 (1986). Thus, § 1983 actions are analogous to state common law tort actions. Applying the "fruit of the poisonous tree" doctrine would skew the proximate cause analysis through which § 1983 damages are determined by extending the chain of causation from the original unconstitutional act all the way through the criminal justice process. Townes, 176 F.3d at 146.

Second, plaintiff challenges Officer Casey's purported factual basis for finding probable cause for the arrest. In addition to disputing that his pick-up truck crossed over the

white fog line, Campbell claims that he had only consumed one "light" beer prior to the Terry stop. That assertion is supported by deposition testimony from teammates who were with Casey during and after the hockey game, before he began driving. Accordingly, plaintiff contests Officer Casey's observations indicating that he was under the influence of alcohol, including Officer Casey's report that Campbell had bloodshot, glassy eyes, smelled of an alcoholic beverage, and performed insufficiently on the Horizontal Gaze Nystagmus and field sobriety tests. Plaintiff also avers that medical problems with his leg, of which Officer Casey was informed, caused any insufficiencies in his performance on the field sobriety tests. Taken together, those factual disputes raise genuine questions of material fact as to whether probable cause existed. Summary judgment is therefore precluded with respect to the merits of plaintiff's § 1983 claim for unreasonable arrest.

Summary judgment based on qualified immunity is likewise unwarranted. Plaintiff has alleged a violation of his Fourth Amendment right not to be arrested without probable cause. E.g., Michigan v. Summers, 452 U.S. 692, 700 (1981) ("every arrest... is unreasonable unless it is supported by probable cause."). That right has been clearly established by the U.S. Supreme Court for decades. Whether a reasonable police officer would have found the existence of probable cause arguable turns on the

truthfulness of Officer Casey's alleged observations of Campbell's inebriation. On that point plaintiff has raised a genuine issue of material fact. Summary judgment will, therefore, be denied on the basis of qualified immunity with respect to plaintiff's § 1983 claim for unreasonable arrest.

### 2. Count II: False Arrest

#### a. Legal Standard

To maintain a cause of action for false arrest under Massachusetts law, a plaintiff must establish that 1) the defendant arrested the plaintiff 2) without probable cause. Lucas v. City of Boston, No. 07-cv-10979-DPW, 2009 WL 1844288, at *25 (D. Mass. June 19, 2009) (citing Mass. Sup. Ct. Jury Instructions § 23.5).

#### b. Application

The parties do not dispute the fact that Officer Casey arrested Campbell. As explained above, however, plaintiff has raised a genuine issue as to material facts relating to the existence of probable cause. Accordingly, summary judgment on plaintiff's false arrest claim will be denied.

### 3. Count III: False Imprisonment

#### a. Legal Standard

To succeed on a claim of false imprisonment, a party must show an

> intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement.

Jonielunas v. City of Worcester Police Dep't, 338 F.Supp.2d 173, 177 (D. Mass. 2004). A confinement through arrest is "unlawful" if the arresting officer lacks probable cause. Goddard v. Kelley, 629 F.Supp.2d 115, 129 (D. Mass. 2009).

### b. Application

The parties do not dispute that Officer Casey intentionally arrested Campbell or that Campbell was conscious during the arrest. As with the § 1983 and false arrest claims, Campbell has raised genuine issues of material fact as to whether probable cause justified his arrest, and thus whether his confinement was unlawful. Summary judgment will, therefore, be precluded on plaintiff's false imprisonment claim.

### 4. Count IV: Intentional Infliction of Emotional Distress

### a. Legal Standard

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish

> (1) That the defendant intended to cause, or should have known that his conduct would cause, emotional distress; (2) that the defendant's conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the plaintiff suffered severe distress.

Sena v. Commonwealth, 417 Mass. 250, 263-64 (Mass. 1994).

### b. Application

Defendant argues that summary judgment should be awarded on the claim of intentional infliction of emotional distress because reasonable suspicion existed to support the Terry stop and probable cause existed to support plaintiff's arrest. He also contends that plaintiff has failed to provide adequate factual support for the claim.

As explained above, based on the evidence provided a reasonable jury could believe plaintiff's version of the events and find that no reasonable suspicion and no probable cause existed. Viewing the facts in the light most favorable to plaintiff and indulging all reasonable inferences in his favor, a jury reasonably could infer that Officer Casey therefore either intended to cause or acted recklessly with respect to the fact that he would cause emotional distress to plaintiff by stopping and arresting him for crimes of which there was little to no evidence he had committed, that Officer Casey's conduct was extreme and outrageous and that it caused plaintiff distress. Plaintiff has also testified in his interrogatory responses that he suffered severe distress resulting from the incident in the form of stress, emotional pain and embarrassment. Defendant's motion for summary judgment on Count IV accordingly will be denied.

**5. Count V: Malicious Prosecution**

**a. Legal Standard**

To sustain a claim of malicious prosecution, plaintiff must show

> that he was damaged because the defendant commenced the original action without probable cause and with malice, and that the original action terminated in his favor.

Chervin v. Travelers Ins. Co., 448 Mass. 95, 103 (Mass. 2006).

A person may be said to have commenced criminal proceedings against another person "if he caused those proceedings to be initiated." Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009). Malice is defined as "any wrong or unjustifiable motive." Id. at 109 (quoting Wilder v. Holden, 41 Mass. 8, 24 (Mass. 1833)). It may be inferred from a lack of probable cause. Id.

**b. Application**

Defendant does not dispute that he commenced an action against plaintiff or that the action terminated in plaintiff's favor. Based on the discussion of Count I above, a reasonable jury could find that Officer Casey arrested Campbell without probable cause. The jury could also infer from its finding of a lack of probable cause that Officer Casey acted with malice. Summary judgment will, therefore, be denied as to Count V.

**6. Damages**

Defendant further argues that, even if probable cause did not exist at the time of the arrest, it subsequently developed due to new evidence discovered immediately after plaintiff was arrested. Consequently, defendant contends that plaintiff did not suffer damages stemming from his arrest.

Plaintiff has, however, raised a genuine issue of material fact regarding two of the three pieces of evidence cited by defendant in support of his assertion. First, plaintiff contends that defendant's perception of an odor of alcohol emanating from plaintiff during transport and booking was inaccurate or untruthful because plaintiff had only consumed one "light" beer before being stopped. Second, plaintiff contends that his refusal to take a Breathalyzer test at the police station was caused by defendant's previous unfair administration of the field sobriety tests.

Defendant also avers that four empty beer cans and two unopened beer cans were found in the back of plaintiff's truck after the arrest. In response, plaintiff states that these cans were leftover from his hockey team's ritual of having one member bring a six-pack of beer for the team to share after games. Neither party contends, however, that Campbell communicated this information to Officer Casey at the time of the stop and arrest. Thus the discovery of the beer cans could, in combination with

other evidence, support a finding of probable cause by a reasonable police officer in Officer Casey's position. Taking the facts in the light most favorable to the plaintiff, however, this sole piece of undisputed new evidence would not have been enough to have created probable cause even after Campbell's arrest. A reasonable jury could, therefore, find that probable cause did not exist either before or after plaintiff's arrest and that defendant's alleged damages were caused by his illegal arrest.

### ORDER

For the forgoing reasons, defendant's motion for summary judgment (Docket No. 19) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton\_\_\_\_\_
Nathaniel M. Gorton
United States District Judge

Dated February 29, 2016